IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>      Plaintiff, )<br>vs. )<br>)<br>**NORBERT MICHAEL TSOSIE** )<br>a.k.a NORBERT MICHAEL DICK<br>)<br>      Defendant. ) | Case No. 1:23-CR-00755-DHU |

## UNITED STATES' SENTENCING MEMORANDUM

On November 3, 2022, Jane Doe took the afternoon off from work. She met her boyfriend, Defendant Norbert Michael Tsosie, so the two could go shopping in Farmington, New Mexico. They drove to Farmington in Jane Doe's vehicle; they also lived together with Jane Doe's parents in Dulce, New Mexico. Late in the afternoon, the two got into an argument near the Walmart in Farmington and as Jane Doe drove them back toward Dulce, they were not speaking. They stopped at a store on the way home where Tsosie bought a bottle of Yukon Jack (whiskey) that he began drinking in the passenger seat while Jane Doe drove. By the time they got back to Jane Doe's parents' house, Defendant was feeling "better" and they decided to drive around Dulce for a little while before going into the house. During the ride, Defendant called someone on his phone. When he ended the call, Defendant suddenly and without warning began to hit the dashboard of the vehicle, then repeatedly kicked the passenger window and punched the windshield. Terrified, Jane Doe pulled off the road and onto the Dulce Rodeo grounds to try to calm him down. It didn't work. Once she parked, Defendant broke off the rear-view mirror, then turned to Jane Doe and began to punch her. She told him to stop, and in response he started

1

to kick her – he was wearing boots. Then he lunged toward her and started to choke her. Still not satisfied, he got out of the vehicle, walked around to the driver's side, grabbed Jane Doe by her neck and pulled her out. She rolled her ankle as she fell. He put her in a choke-hold and she reported feeling like she was losing consciousness and unable to scream. She was able to scratch his left eye as she struggled to free herself from him, and he let go. She fell to the ground and he kicked her.

When the attack stopped, Defendant told Jane Doe to drive them home. She did not want her parents to see her injuries, so they snuck into the house and into her room before her parents could realize she was hurt. They went to bed. The next morning, Defendant claimed not to remember what happened. Jane Doe told Defendant that she wanted to end their relationship, but he had no home and no car, and as he had before, Defendant manipulated her into doing what he wanted. She spent most of the morning driving him between Shiprock and Farmington to find a friend or relative for him to stay with. She told him that she wanted to go to a hospital – her eye was very swollen and she was in pain – but Defendant told her to try to ice her eye as she drove. In the afternoon, he found someone to pick him up.

Once he was gone, Jane Doe went to the Emergency Department at San Juan Regional Medical Center. She told the Emergency Department staff what had happened, which was consistent with wat she later told law enforcement. She was discharged the same day with a diagnosis of concussion, cervical strain and an ankle sprain. She also had a visible contusion on her face. The pain continued and she twice more sought medical care in the weeks that followed.

In light of the facts and circumstances, the United States respectfully encourages the Court to accept the parties' plea agreement and sentence Defendant to a 24-month term of imprisonment.

I.  **LEGAL STANDARD**

In imposing a sentence that is sufficient but not greater than necessary, the Court must consider the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training; medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…
(5) any pertinent policy statement;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1) - (7).

II.  **ARGUMENT**

    **A. The nature and circumstances of the offense and the history and characteristics of the defendant.**

Defendant Norbert Tsosie is 32 years old. Though not included in his Criminal History calculation, his tribal record and magistrate court record shows that he has been violent and dangerous to others since at least the age of 27. See PSR ¶¶ 38-39, 48, 50. He has the benefit of a mother who is supportive and a childhood where his needs were met. PSR ¶ 52. He told Probation that he suffered from physical and mental abuse as a young child resulting from harsh physical punishment and that the period of abuse lasted one year. PSR ¶ 53.

This crime was not Defendant's first act of domestic violence. When he met Jane Doe, he was – by his own admission – on his way to jail. PSR ¶ 13. He had been ordered to take a domestic violence class but refused to do so. *Id.* Though he may claim to have had a troubled childhood and a problem with alcohol abuse, this defendant has had warnings and opportunities to address both via his tribal court arrests. His cruel impulses are clearly illustrated by this crime: Without warning, he began hitting and kicking the inside of the vehicle Jane Doe was driving, then shifted his violence to her. It wasn't enough to hit her in the car – he had to drag her out of it, choke and strangle her, then kick her on the ground. Even if it were true that he did not remember his vicious acts the next morning, with the light of day and the intoxication worn away, he brushed off Jane Doe's plea to go to the hospital and manipulated her into driving him for miles and hours to find a place where he could stay. The full picture of Defendant's acts warrants a significant sentence.

**B. The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant.**

A 24-month sentence is just. Defendant may have had his personal struggles, but he has also been on notice for some time that his violent impulses hurt others and violate the law. Defendants, would-be defendants, and victims should know that violence against another person has meaningful consequences. It would be unjust to leave Jane Doe to absorb the blows of Defendant's real and perceived problems in his life along with his unwillingness to address his alcohol issues and violent tendencies. In this case, the violence came out of nowhere and was exceptionally dangerous. Defendant began to hit

4

Jane Doe as she was driving a car, putting them and potentially other motorists at risk. Defendant's escalation to grabbing Jane Doe from the vehicle by her neck after she pulled into a parking area and putting her in a chokehold could easily have resulted in life-threatening injuries or death.[1] A 24-month sentence protects Jane Doe and potentially other individuals from Defendant's reckless outbursts of violence.

### C. The kinds of sentences available and the sentencing range established for this defendant.

A violation of 18 U.S.C §§ 1153 and 113(a)(8), assault of an intimate partner by strangulation, carries a penalty of a fine or imprisonment of not more than ten years, or both. *See* 18 U.S.C. § 113(a)(8). The PSR calculates that with a criminal history category of I, and total offense level of 17, which includes a three-level adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b). PSR ¶¶ 24-34. Defendant's guideline imprisonment range is 24 to 30 months. PSR, ¶ 76. A 24-month sentence that is the low end of the guideline range calculated just in that it is sufficient but not greater than necessary to address Defendant's conduct and the harm he has caused.

### III. A DOWNWARD VARIANCE IS NOT WARRANTED

Defendant seeks a downward variance and, in support, cites his childhood struggles, his limited criminal history, and Jane Doe's forgiveness. His request is contrary to the assessment in the PSR, which found no basis for a departure or variance. PSR ¶ 91, 93. It noted that Jane Doe was significantly injured and that defendant had a criminal history dating back to age 20. PSR ¶ 92. Jane Doe was so traumatized by the incident that

---

[1] *See* Nancy Glass, et al., *Non-fatal Strangulation is an Important Risk Factor for Homicide of Women,* J. Emerg. Med. 2008 Oct; 35(3): 329-335, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2573025/

she experience flashbacks and took two weeks of annual leave from work to try to recover from Defendant's unprovoked and dangerous attack. See PSR ¶ 18. She has experienced low self-esteem and negative thoughts following the assault and feels grateful to have survived it. PSR ¶ 19. Her decision to forgive Defendant – who has called her repeatedly from jail – should not be grist for a downward variance. And Defendant has offered no other meaningful or extraordinary information that would support a sentence below the Guideline range.

## IV.  CONCLUSION

For the foregoing reasons, a 24-month sentence is just. The United States respectfully encourages the Court to sentence Defendant accordingly.

Respectfully submitted,

ALEXANDER M. M. UBALLEZ
United States Attorney

*/s/ Electronically filed on May 9, 2024*
KIMBERLY BELL
Assistant United States Attorney
Post Office Box 607
Albuquerque, NM 87102
(505) 346-7274

I HEREBY CERTIFY that on May 9 2024, I filed the foregoing electronically through the CM/ECF system, which caused counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

/s/
_____
KIMBERLY BELL
Assistant U.S. Attorney